UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **WILLIE HARRIS,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: **2:14-CV-2185-RDP** |
| } | |
| **CAROLYN W. COLVIN,** } | |
| **Acting Commissioner of Social Security,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OF DECISION

Plaintiff Willie Harris brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his claims for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). *See also*, 42 U.S.C. §§ 405(g) and 1383(c). Based on the court's review of the record and the brief submitted by Defendant, the court finds that the decision of the Commissioner is due to be affirmed.

**I.     Proceedings Below**

Plaintiff applied for a period of disability, DIB, and SSI on October 21 and 28, 2009, alleging a disability onset date in June 2008.[1] (Tr. 127-37). These applications were denied on March 31, 2010. (Tr. 59-72). On September 22, 2010, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ") which was held on November 18, 2011. (Tr. 21, 73). Three days later, on November 21, 2011, Plaintiff requested to withdraw his claim for disability

---

[1] Plaintiff originally claimed he was disabled on June 30, 2008, but during the hearing requested his onset date be changed to the date of his sobriety. (Tr. 26, 156). However, this is a moot issue because the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the earlier onset date. (Tr. 11).

benefits. (Tr. 196-97). Notwithstanding this request, the ALJ issued a decision finding Plaintiff not disabled. (Tr. 16). Plaintiff filed his appeal with the sole argument that the ALJ does not have the legal authority to determine whether Plaintiff was disabled *after* Plaintiff chose to withdraw his disability claim. (Doc. 1, p. 2-3). The Appeals Council denied Plaintiff's request for review (Tr. 1), making this case ripe for judicial review.

## II.   Facts

Plaintiff was fifty-two years old at the time his hearing. (Tr. 26). Plaintiff testified that he has, roughly, a fifth grade education and was functionally illiterate.[2] (Tr. 25-26), Plaintiff has past relevant work history as a van driver, truck driver, and moving truck driver. (Tr. 50). Plaintiff testified during his hearing that he became disabled on November 1, 2009 due to a heart attack and hammer toes. (Tr. 26).

On July 9, 2009, Plaintiff was seen by Dr. Lori Vazzana after a sudden onset of chest pain that appeared to be induced by recent cocaine use. (Tr. 236). Dr. Vazzana reported that Plaintiff had suffered a previous heart attack three years earlier and that was also induced by cocaine use. (*Id.*). At the time, Plaintiff reported a "7/10 chest pain." (*Id.*).

On August 7, 2009, Dr. Dagan Coppock, Plaintiff's treating physician, saw Plaintiff in connection with a follow-up exam to Plaintiff's heart surgery. (Tr. 297). Dr. Coppock reported that Plaintiff "has no complaints," and was "[n]egative for chest pain." (*Id.*). Dr. Coppock saw Plaintiff again on November 25, 2009, this time for depression. (Tr. 305). Plaintiff reported no

---

[2] The record concerning Plaintiff's educational background is murky. (Tr. 15). Though Plaintiff testified at his hearing that he only obtained a fifth grade education and could not read or write, Plaintiff stated to the social security administration that he completed the ninth grade and had vocational training. (Tr. 166). Plaintiff also informed a state Agency mental health examiner, Dr. Mark Sokal, that he had "completed the eighth grade" and could "read and write and add and subtract without problem." (Tr. 326). Supporting his statement to Dr. Sokal, Plaintiff successfully spelled "world" during an oral memory test with the same doctor. (Tr. 327).

chest pains and Dr. Coppock reported that Plaintiff's "[e]nergy level has improved significantly." (*Id.*).

On January 4, 2010, Dr. Coppock learned that Plaintiff had filed for disability. (Tr. 308). During the exam, Dr. Coppock opined that Plaintiff "admits to poor med compliance and [is] not following up with [his] cardiologist." (*Id.*). Additionally, Dr. Coppock did not mention any report of pain by Plaintiff, and noted that "he still feels impaired [in] his ability to engage with work due to low energy/fatigue." (*Id.*). During this exam, Plaintiff gave Dr. Coppock two residual functional capacity ("RFC") forms to fill out. (Tr. 276-82).

Dr. Coppock's RFC questionnaires reflect what Plaintiff told him. The only symptom listed in the report is "Shortness of Breath," even though fatigue and chest pain were options. (Tr. 276). When asked what degree Plaintiff could tolerate work stress, Dr. Coppock reported that Plaintiff could not perform even low stress jobs because "[Plaintiff] reports inability to perform low stress jobs." (Tr. 277). Dr. Coppock opined that Plaintiff's cardiac condition could "often" be expected to interfere with his attention and concentration. (*Id.*). Dr. Coppock estimated that Plaintiff could walk one block before needing rest, could only sit, stand, or walk consistently for less than two hours, and would likely be absent from work more than three times a month. (Tr. 278). On the second form, Dr. Coppock either referred to the form containing the information above or put the same information. (Tr. 280-82).

Plaintiff's next visit was on March 9, 2010. (Tr. 310). Plaintiff reported getting winded when climbing three flights of stairs, but otherwise had nothing negative to report. On April 12, 2010, Dr. Coppock observed that Plaintiff was negative for fatigue and chest pain, and had a stable respiratory system. (Tr. 312). On May 12, 2010, Plaintiff reported he could not work due to chronic dyspnea. (Tr. 315). However, Dr. Coppock reported that Plaintiff was not in distress

and had a normal respiratory system.  (*Id.*).  Plaintiff's cardiovascular system report included a finding of Recurrent Respiratory Papillomatosis and a potential heart murmur.  (*Id.*).

On July 22, 2010, Dr. R.C. Brown performed a physical RFC assessment to determine if Plaintiff was physically disabled.  (Tr. 324).  Dr. Brown relied on Plaintiff's medical records, concluding that Plaintiff could occasionally lift fifty pounds and frequently lift twenty-five pounds or less.  (Tr. 318).  Dr. Brown reported that Plaintiff could stand or sit for six hours during an eight hour workday.  (*Id.*).  Dr. Brown concluded that Plaintiff could work because Plaintiff had several normal cardiac evaluations, was stable and non-severe, and no foot issue was mentioned in the medical record or in Plaintiff's disability paperwork.  (Tr. 324).

Dr. Mark Sokol performed a mental evaluation for the state agency on August 12, 2010.  (Tr. 325).  Plaintiff complained that he could not work because he was "constantly short of breath and exhausted."  (*Id.*).  Plaintiff reported he was two years sober and graduated from the North Cottage program.  (Tr. 326).  Plaintiff reported no learning difficulties, and that he was literate.  (*Id.*).  Plaintiff complained of occasional throbbing pain in his feet.  (*Id.*).  Dr. Sokol concluded that Plaintiff suffered from a moderate form of depression and had a mildly impaired short term memory.  (Tr. 327-28).  Dr. Sokol made no conclusions on whether Plaintiff was disabled from his mental condition.

On October 30, 2010, Dr. Stacey Fiore reviewed Dr. Sokol's report and the rest of his medical records to determine if Plaintiff met the Listings.  (Tr. 329).  Dr. Fiore concluded that Plaintiff's statements on his drug and alcohol abuse are inconsistent and that even with his depression diagnosis, had no higher than moderate functional limitations in his capacity to work.  (Tr. 341-43).  Dr. Fiore further concluded that Plaintiff could maintain concentration for up to

two hours at a time, and could tolerate both the social demands of a work setting and reasonable changes that might occur at a job. (Tr. 344).

Plaintiff saw Dr. Coppock again on July 12, 2011, after going more than a year without seeking treatment. (Tr. 347). Dr. Coppock noted that Plaintiff had not been taking his medication compliantly, his respiratory system was fine, he was not in any distress, and his cardiovascular system was unchanged since his last check-up. (*Id.*). Dr. Coppock stressed to Plaintiff that it was very important that he take his medication. (Tr. 348).

Plaintiff was admitted to Aultman Hospital on September 18, 2011. (Tr. 349-50). Plaintiff's only complaint was his chest pain. (Tr. 353). Plaintiff told hospital staff that the chest pain occurred while he was having alcoholic beverages, though he denied any vomiting or strenuous activity during the onset of the pain. (*Id.*). Plaintiff reported to hospital staff that he drinks "approximately a six pack of beer a day"; he denied using any illegal drugs. (Tr. 354).

**III.    ALJ Decision**

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether

the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled.  20 C.F.R.  § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ must first determine the claimant's RFC, which refers to the claimant's ability to work despite his impairments.  20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled.  *Id.*  If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  20 C.F.R. § 404.1520(a)(4)(v).  In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience.  20 C.F.R. § 404.1520(g).  Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date and has the following severe impairments: coronary artery disease, status post myocardial infarction with three stenting procedures, mood disorder, and substance abuse disorder.  (Tr. 11).  The ALJ then found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § Part 404, Subpart P, Appendix 1," noting that:

> Listing 4.04 requires chest discomfort associated with myocardial ischemia with:
> (A) sign or symptom limited exercise test; (B) three separate ischemic episodes or

> (C) coronary artery disease; AND, marked limitation of physical activity. The record contains no medical findings that meet the criteria of this listing.
>
> The severity of [Plaintiff]'s mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.09.

(Tr. 12).

> The ALJ also concluded that Plaintiff:
>
> Has the residual functional capacity to perform a wide range of medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c): lifting and carrying 50 pounds occasionally and 25 pounds frequently; standing and/or walking six hours out of an eight-hour workday and sitting six hours out of an eight-hour workday. [Plaintiff] is capable of frequently climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling: however, [Plaintiff] is limited to occasionally climbing ladders, ropes and scaffolds. [Plaintiff] is limited to maintaining concentration, persistence or pace in two-hour increments, eight hours per day, forty hours per week. [Plaintiff] is limited to performing work with a specific vocational preparation of three or less.

(Tr. 13).

During Plaintiff's hearing, the ALJ asked vocational expert Dr. James F. Scorzelli if a person with Plaintiff's designated RFC could perform any of Plaintiff's past relevant work. Dr. Scorzelli responded that Plaintiff "could return to the job as a van driver and a truck driver." (Tr. 51).

The ALJ concluded on the basis of Dr. Scorzelli's testimony that Plaintiff "is capable of performing past relevant work as a van driver and truck driver. This work does not require the performance of work-related activities precluded by [Plaintiff]'s residual functional capacity." (Tr. 15). The ALJ determined that Plaintiff has not been under a disability, as defined in the Social Security Act, from June 30, 2008, through the date of the ALJ's decision. (Tr. 16).

## IV. Plaintiff's Argument for Reversal

Before the ALJ, Plaintiff attempted to dismiss his petition and argued that the ALJ was without authority to issue a decision on the merits of his claim. Plaintiff has not submitted a

7

brief in support of overturning the ALJ's disability determination or the Commissioner's decision. There is no argument challenging the ALJ's decision other than the allegation in Plaintiff's complaint that the ALJ could not determine if Plaintiff was disabled after Plaintiff withdrew his claim. (Doc. 1, p. 2-3). Thus, the court considers all arguments on issues of fact waived. *See United States v. Cunningham*, 161 F.3d 1343, 1344 (11th Cir. 1998) ("because Cunningham has offered no argument on this issue on appeal, we find that he has abandoned it.").

## V.   Standard of Review

The only issues before this court relating to the contents of the ALJ's decision are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings

must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## VI. Discussion

### A. The ALJ Had the Authority to Determine if Plaintiff was Disabled After Plaintiff Withdrew His Claim

The controlling regulations on this issue are 20 C.F.R. §§ 404.957(a), and 416.1457(a). The texts of both regulations are the same:

> An administrative law judge **may dismiss** a request for a hearing under any of the following conditions:
>
> **(a)** At any time **before notice of the hearing decision is mailed**, you or the party or parties that requested the hearing ask to withdraw the request. This request may be submitted in writing to the administrative law judge or made orally at the hearing.

20 C.F.R. §§ 404.957(a), 416.1457(a) (emphasis added). The text clearly grants the ALJ the discretion to either accept or deny Plaintiff's withdrawal request. The ALJ did not err in determining that Plaintiff was not disabled after Plaintiff withdrew his disability request.

### B. The ALJ Correctly Followed the Five Step Test

After reviewing the ALJ's decision, the court finds that the ALJ properly engaged in the five-step test. The ALJ determined that Plaintiff: (1) did not engage in substantial gainful activity (Tr. 1); (2) had "impairments [that] are severe, in combination if not singly" (*Id.*); and (3) did not meet relevant Listing requirements (Tr. 12). In light of these findings, the ALJ created an RFC determination for Plaintiff (Tr. 13); and determined, with the aid of a vocational expert, that certain jobs in Plaintiff's past relevant work could be performed by an individual

with Plaintiff's RFC. (Tr. 15). The court finds therefore concludes that the ALJ followed the proper legal standards. *See* 20 C.F.R. §§ 404.1520(a); 416.920(b).

### C. The ALJ's Disability Determination is Supported by Substantial Evidence

After review, the court also finds that the ALJ's decision is supported by substantial evidence. The ALJ's list of severe impairments is well-supported by the medical record, and is likely every impairment Plaintiff would argue he suffers from on appeal. (Tr.11). The ALJ determined Plaintiff did not meet Listings 12.04 and 12.09, and his conclusion that Plaintiff does not have any severe or extreme impairments is supported by Dr. Fiore's medical report. (Tr. 12, 341-43). Furthermore, Dr. Fiore's report is buttressed by Dr. Susan Witkie, who testified as to similar findings at Plaintiff's hearing. (Tr. 43-46).

Additionally, the court finds that the ALJ's RFC determination is supported by substantial evidence. Dr. Brown's medical consultation report matches the ALJ's determination almost perfectly. (Tr. 13, 318-19). While an argument could be made that Dr. Coppock's RFC statement is entitled to controlling weight because Dr. Coppock was Plaintiff's treating physician, this argument fails upon a review of the record. Plaintiff had several normal cardiac examinations, infrequently complained of shortness of breath to Dr. Coppock, and infrequently took his medications. (Tr. 297, 305, 308, 312, 347-48). This constitutes good cause to reject Dr. Coppock's assessment. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) ("We have found 'good cause' to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. We have also found good cause where the doctors' opinions were conclusory or inconsistent with their own medical records.") (internal citations omitted).

Substantial evidence also supports the ALJ's determination that Plaintiff's subjective testimony was incredible. The Eleventh Circuit follows a two-prong pain standard, which requires that:

> In order to establish a disability based on testimony of pain and other symptoms, a claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).

After an ALJ determines that an objectively determined medical condition can reasonably be expected to cause the pain, an ALJ may reject the subjective pain testimony as incredible if the ALJ can show inconsistencies between the claimant's testimony and their daily activities, medical record, doctor's notes, and any other relevant evidence. *See* 20 C.F.R. § 416.929(c)(3).

The ALJ properly recited the pain test (Tr. 13), and found Plaintiff's subjective testimony on his fatigue not fully credible. (Tr. 14). The ALJ cited the report of Dr. Brown in discrediting Plaintiff's alleged physical limitations, and Dr. Fiore's mental report to discredit Plaintiff's alleged difficulty concentrating. (Tr. 14). Dr. Coppock's report was properly rejected for reasons discussed above. (*See intra*. 9). Moreover, Plaintiff's inconsistent testimony regarding his sobriety[3] and educational history support the conclusion that Plaintiff is incredible. (Tr. 14-15). An ALJ may reject subjective testimony on the basis of a discrepancy about a claimant's substance abuse, when that abuse is relevant. *See Green v. Colvin*, 2014 WL 1379969 *7 (S.D. Ga. 2014) ("In making these credibility determinations, the ALJ was free to cite Green's

---

[3] Specifically, although the ALJ noted that Plaintiff, through his attorney, reported at the hearing that Plaintiff had been "free of all substances, either drugs or alcohol" since November 1, 2009, that representation is inconsistent with Plaintiff's September 18, 2011 admission to hospital staff that he drank a six-pack of beer a day. (Tr. 354). Though there are other inconsistencies in the record, this is the most egregious.

January 2009 report of no drug or alcohol in the prior six months, only to then claim (six months later) that he had last used drugs or alcohol 'about two years' ago.").

Finally, the ALJ's determination that Plaintiff could perform past relevant work given Plaintiff's RFC is supported by the hearing testimony of the vocational expert. (Tr. 51).

**VII. Conclusion**

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this July 20, 2016.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE